**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
WEST PALM BEACH DIVISION
Case No. 9:26-cv-81194-EA

X STRATEGIES LLC,

Plaintiff,

v.

DEREK UTLEY,
STARK DEFENSE INDUSTRIES, INC.,
ANNA WEISHEIMER, &
ANNA DICENZO FITNESS LLC,

Defendants.
________________________________________/

**DEFENDANTS DEREK UTLEY & STARK DEFENSE INDUSTRIES, INC.'S VERIFIED MOTION TO DISQUALIFY HOLLAND & KNIGHT LLP**

Defendants Derek Utley and Stark Defense Industries, Inc. (collectively "Utley") respectfully move to disqualify their former attorneys at Holland & Knight LLP as counsel for X Strategies LLC and to authorize a subpoena on Holland & Knight for additional supporting evidence.[1]

***Introduction***

Holland & Knight told multiple third-parties, in more than one matter, it was counsel to Derek Utley and his company, Stark Defense Industries, Inc. Holland & Knight negotiated a personal settlement on behalf of Derek Utley, and handled multiple business matters for him as well. Holland & Knight told Derek Utley – in connection

[1] Derek Utley's supporting affidavit is being filed under seal.

with the very settlement document it drafted and that bars this lawsuit – that it "cannot and will not be adverse to [] Derek Utley and Stark Defense Industries." Any yet, here we are.

Two independent grounds require disqualification. First, under Rule 4-1.9 of the Rules Regulating The Florida Bar, a lawyer may not represent another person in the same or a substantially related matter that is materially adverse to a former client and may not use information relating to the prior representation to the former client's disadvantage. Once the prior attorney-client relationship is shown, Florida law applies an irrebuttable presumption that confidences were shared — a presumption that carries special force where, as here, the prior representation concerned confidential personal matters — and the conflict is imputed to the entire firm.

Second, under Rule 4-3.7, a lawyer may not act as advocate at a trial in which the lawyer is likely to be a necessary witness. Because Holland & Knight drafted the Confidential Settlement Agreement at the heart of this dispute, its attorneys are necessary witnesses to its negotiation, drafting, and intended scope. For either reason, and especially both together, the Court should disqualify Holland & Knight.

Finally, Utley is aware of numerous attorney-client privileged emails between him and his former attorney David Lisko at Holland & Knight. Those emails concern multiple personal and business matters both related and unrelated to X Strategies and also include emails that specifically discuss the conflict-of-interest Holland & Knight

would have that would prevent it from ever being adverse to Mr. Utley. The Defendants request an order authorizing a subpoena on Holland & Knight to obtain those emails and related communications and internal notes.

**BACKGROUND**

1. Holland & Knight represented Derek Utley and his business Stark Defense Industries in business matters both related and completely unrelated to X Strategies. *See* Sealed Declaration.

2. Holland & Knight represented Derek Utley in a personal dispute completely unrelated to X Strategies. *Id.* This is particularly relevant because the prior personal dispute required Holland & Knight to defend Utley from attacks on his character. *Id.* That prior personal dispute was not public in any way. *Id*. In connection with that prior representation, Holland & Knight also learned private information about Mr. Utley's personal finances. *Id*. The current lawsuit is a sprawling attack on Utley's character, falsely accusing him of embezzlement and other dishonest acts, and it falsely accuses him of being a degenerate gambler and drinker. D.E. 1. Holland & Knight is in a position to exploit private information learned from Utley against Utley in this litigation. It absolutely must not and cannot be allowed to do so.

3. Holland & Knight drafted the Confidential Settlement Agreement between Utley and Bruesewitz that bars virtually all of this lawsuit. *Id.*

4. Holland & Knight claims it was drafting the document on behalf of X Strategies, but X Strategies only had two owners and officers at the time – Utley and Bruesewitz. It is unclear who, if anyone, at X Strategies was authorizing Holland & Knight's involvement. *Id.*

5. Holland & Knight neither sought nor obtained a conflict waiver. *Id*.

6. Holland & Knight did not obtain sufficient informed consent. *Id*.

7. To the best of Utley's recollection, he did not respond to that email expressly acknowledging the conflict and/or providing meaningful informed consent. *Id*. His terse reply and further email communications are insufficient.

8. Holland & Knight's email further stated: "Holland & Knight cannot and will not be adverse to Alex Bruesewitz, The Bruz Corporation, Derek Utley, or Stark Defense Industries Inc." Even assuming *arguendo* the receipt of this email constitutes informed consent, any consent was predicated on Holland & Knight's representation that it "cannot and will not be adverse" to Utley or Stark Defense Industries. Nor does the email contain any limitation or qualification on its statement that it cannot or will not be adverse to Utley or Stark Defense Industries. *Id*.

9. At the time, Utley and Stark Defense Industries understood that the Confidential Settlement Agreement drafted by Holland & Knight completely extricated Utley and Stark Defense Industries from X Strategies and from their former business partners Bruesewitz and Bruz Corporation. They also understood that the broad

release contained within the Confidential Settlement Agreement drafted by Holland & Knight included any claim that belonged to X Strategies, which, upon execution, was a wholly owned subsidiary and affiliate of Bruz Corporation. *Id*. Holland & Knight was tasked with drafting documents extricating Utley from X Strategies; months later it is representing X Strategies in litigation against Utley, which by default, requires Holland & Knight to argue that Utley was not extricated from X Strategies. Put simpler, Holland & Knight is now tasked with arguing that Holland & Knight did not do its job.

10. Accordingly, Holland & Knight cannot represent X Strategies in litigation against its former clients, Derek Utley and Stark Defense Industries. Furthermore, Holland & Knight may itself be exposed to liability for legal malpractice, breach of fiduciary duty, negligent misrepresentation (§ 552 of the Restatement) and tortious interference by Derek Utley and Stark Defense Industries. Utley took Holland & Knight at its word when it expressly said it "could not and will not be adverse" to him.

## ARGUMENT

### I. Holland & Knight Must Be Disqualified Under Rule 4-1.9 Because It Now Represents Interests Materially Adverse to Its Former Client in a Substantially Related Matter.

A party's right to counsel of choice is not absolute, and a court will disqualify counsel where continued representation violates the applicable rules of professional conduct. This Court applies the Rules Regulating The Florida Bar. S.D. Fla. L.R. 11.1(c). *See Silvers v. Google Inc.*, No. 05-80387-CIV-RYSKAMP, 2007 WL 141153, at *1 (S.D. Fla.

Jan. 16, 2007). Rule 4-1.9 provides that a lawyer who has formerly represented a client "must not afterwards" "represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent," and must not use information relating to the former representation to the former client's disadvantage. R. Regulating Fla. Bar 4-1.9.

To disqualify counsel under Rule 4-1.9, the movant must show "that (1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client." *First Fid. Tr. Servs., Inc. v. Shelter Cove Condo. Ass'n, Inc.*, 329 So. 3d 222, 226 (Fla. 1st DCA 2021); *see also Pagidipati v. Vyas*, 353 So. 3d 1204 (Fla. 2d DCA 2022). The Florida Supreme Court established this standard in *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630, 633 (Fla. 1991), where it held that a prior attorney-client relationship in a substantially related matter gives rise to an "irrefutable presumption that confidences were disclosed," and it remains the governing test in Florida. Once the former attorney-client relationship is established, "the irrefutable presumption that confidences were disclosed attaches and cannot be overcome," and the firm's argument that no confidences were in fact shared is unavailing. *First Fid.*, 329 So. 3d at 227.

Both elements are satisfied here. First, Holland & Knight indisputably had an attorney-client relationship with Utley: it personally represented him in private business (business unrelated to X Strategies) and personal matters, as explained in detail in Utley's declaration filed under seal. "[T]he test for determining this relationship 'is a subjective one and hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice.'" *Pagidipati*, 353 So. 3d at 1213. Here, the accompanying declaration satisfies that test. That relationship triggers the irrebuttable presumption that Utley disclosed confidences to the firm — and here that presumption reflects reality, because the prior matter was one in which Utley necessarily reposed highly sensitive personal confidences. *First Fid.*, 329 So. 3d at 227. The firm cannot defeat disqualification by contending that it did not in fact receive or will not use such confidences; the presumption "attaches and cannot be overcome." *Id.* Second, this action is "substantially related" to Holland & Knight's prior work. Matters are substantially related "if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work the lawyer performed for the former client." *Blamey v. Menadier*, 283 So. 3d 938, 941 (Fla. 3d DCA 2019). Florida courts apply that principle squarely to a lawyer who drafted a transactional document for a client and then litigated over it: in *Blamey*, the court disqualified counsel who had prepared a transfer document for the former client and later sued over the failed transfer, because

"the unconsummated transfer on which [counsel] worked . . . is at the heart of the lawsuit." *Id.* Here, Holland & Knight drafted the Confidential Settlement Agreement now central to this case and would be litigating — and attacking — the meaning and effect of its own work against the very client for whom it once acted. Further, the personal matters that Utley disclosed to Holland & Knight are within the scope of matters that ultimately led to Utley's signing of the Confidential Settlement Agreement, and are now being used against him in the present Complaint.

The confidential and personal character of the prior representation makes disqualification all the more imperative, and it is here that the strongest ground for disqualification lies. Rule 4-1.9 separately forbids a lawyer who formerly represented a client from "us[ing] information relating to the representation to the disadvantage of the former client" except as the rules otherwise permit. R. Regulating Fla. Bar 4-1.9. The Florida Supreme Court has explained why that prohibition is fundamental: client confidentiality "serves a second purpose fundamental to a fair adversary system," because "[o]ur legal system cannot function fairly or effectively if an attorney has an informational advantage in the form of confidences gained during a former representation of his client's current opponent." *K.A.W.*, 575 So. 2d at 632. For that reason, the Florida Supreme Court rejected the view "that actual proof of prejudice is a prerequisite to disqualification"; the prior relationship alone raises the irrefutable

presumption, and the confidences a client reposed "could be used against him" in the adverse action. *Id.* at 634.

Holland & Knight did not merely learn generic commercial information about Utley. It was retained to defend Utley in personal matters. The present lawsuit is a sprawling but baseless attack on his character — accusing Utley of embezzlement and dishonesty and branding him a degenerate gambler and drinker. A firm that holds a former client's most sensitive personal confidences cannot litigate directly against him — attacking the very character it was once retained to defend — without placing those confidences at risk. Florida courts reserve their strongest protection for precisely this situation: "[o]btaining confidential client information, switching sides in an ongoing lawsuit, and then filing a legal response against the former client over its objections, is worthy of the strongest protection of the abandoned client's interests." *Rombola v. Botchey*, 149 So. 3d 1138, 1145 (Fla. 1st DCA 2014). The threat is gravest as to non-public confidences — the private, personal information that "is oftentimes far more potentially harmful if disclosed to adversaries (or used against a former client) than what is in the record." *Id.* at 1144. Holland & Knight has "literally gone from [Utley's] champion to his nemesis." *Id.* at 1143.

The irrebuttable presumption exists precisely so that a former client need not reveal the confidences he seeks to protect in order to safeguard them. *First Fid.*, 329 So. 3d at 227, n.2. Courts in the Eleventh Circuit and across the country have enforced that

principle for decades, and their reasoning applies directly here. Within this Circuit, "if an attorney is engaged in substantially related litigation against a former client, a conclusive presumption arises that confidential information has been given to the attorney," and "any doubt is to be resolved in favor of disqualification." *Rentclub, Inc. v. Transamerica Rental Fin. Corp.*, 811 F. Supp. 651, 654 (M.D. Fla. 1992); *see also T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 69 (S.D.N.Y. 1953) ("No client should ever be concerned with the possible use against him in future litigation of what he may have revealed to his attorney. Matters disclosed by clients under the protective seal of the attorney-client relationship and intended in their defense should not be used as weapons of offense."). To hold otherwise would put the former client to the "Hobson's choice of either having to disclose his privileged information in order to disqualify his former attorney or having to refrain from the disqualification motion altogether." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 740 (2d Cir. 1978). Because even a scrupulous lawyer might unconsciously draw on a former client's confidences, courts apply "a strict prophylactic rule to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage," and "even an appearance of impropriety requires prompt remedial action by the court." *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973). On facts closely analogous to these — a firm that had learned a client's sensitive personal financial information and later appeared adverse to him — the Ninth

Circuit held that "[i]t is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification." *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980). These out-of-state decisions do not bind this Court, but they are the widely followed source of the rule Florida has adopted, and they confirm that it is the risk of exploitation — not proof of it — that compels disqualification.

Nor can Holland & Knight avoid this result by claiming that Utley somehow consented to its adverse representation. A client's consent to a firm's representation of an adverse party is no defense to disqualification grounded in the protection of confidences, because "it is impossible to conclude that a client could ever have any reason to desire that information disclosed in confidence should be utilized against him." *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 229 (7th Cir. 1978) (noting that a client's consent to representing another entity does not mean consent to represent the other entity *against* the consenting client). Utley never agreed to have the private confidences he reposed in Holland & Knight marshaled against him, and the firm's own representation that it "cannot and will not be adverse" to him forecloses any such suggestion. The facts that led to Utley's separation, and the confidences he reposed in the firm, could now be used to his disadvantage and as leverage against him by his former counsel, on behalf of his former employer and Plaintiff, X Strategies. The more sensitive the prior matter, the graver the threat to the integrity of the proceedings and the stronger the case for disqualification.

The conflict is not limited to any individual lawyer. Under Rule 4-1.10(a), while lawyers are associated in a firm, "none of them may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9." R. Regulating Fla. Bar 4-1.10(a). Holland & Knight's conflict is therefore imputed firm-wide, and substitution of a different Holland & Knight attorney cannot cure it.

As Holland & Knight's former counsel, Utley has standing to seek disqualification as of right; a former client need not resort to the narrower showing required of a non-client movant. *See Anderson Trucking Serv., Inc. v. Gibson*, 884 So. 2d 1046, 1050 (Fla. 5th DCA 2004). The fair administration of justice is compromised when a law firm is in a position to use confidential information gained during the prior representation in a subsequent action against the former client. *Id.* Utley has not given informed consent to the adverse representation. While disqualification is "an extreme remedy" to be employed "sparingly," *Anderson Trucking*, 884 So. 2d at 1049, it is warranted — indeed required — where, as here, both prongs of the governing test are met on the face of the firm's own prior engagement and its own drafting of the Confidential Settlement Agreement at issue. *See Blamey*, 283 So. 3d at 941.

Holland & Knight also misled Utley and Stark Defense Industries. In no uncertain terms, and in connection with the very Confidential Settlement Agreement that bars most of this lawsuit, the law firm told Utley that it could not and would not be

adverse to Utley or Stark Defense Industries. Utley and Stark Defense Industries reasonably relied upon that statement.

**II. Holland & Knight Must Also Be Disqualified Under Rule 4-3.7 Because Its Lawyers Are Necessary Witnesses Concerning the Agreement They Drafted.**

Rule 4-3.7(a) provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" unless a narrow exception applies (uncontested issue, formality, the nature and value of legal services, or substantial hardship on the client). R. Regulating Fla. Bar 4-3.7(a). The rule guards against the prejudice that arises when the same person serves as both witness and advocate.

Holland & Knight's lawyers are necessary witnesses here. The firm drafted the Confidential Settlement Agreement whose meaning and intended scope are disputed, and the drafter of a disputed provision "would be the most qualified person to testify as to the meaning of that portion of the [agreement]." *Healthcrest, Inc. v. Am. Med. Int'l, Inc.*, 605 F. Supp. 1507, 1511 (N.D. Ga. 1985) (disqualifying the drafting attorney). On closely analogous facts, the court disqualified a plaintiff's firm from litigating a contract it had drafted, finding it "troubling" that the firm "would be arguing to the jury the meaning of documents they drafted," and that the judicial system "has an extremely strong interest in discouraging such a result." *Id.* The same concern controls here: the negotiation, drafting, and intended scope of the Confidential Settlement Agreement are squarely in issue, and the testimony of Holland & Knight's lawyers is necessary to resolve them.

This ground is independent of, and reinforces, the Rule 4-1.9 conflict. Utley does not seek disqualification merely by threatening to call opposing counsel; the need for the drafting lawyers' testimony arises from the firm's own central role in creating the disputed instrument. When an attorney becomes a "central figure" in the case, disqualification is appropriate. *See Fleitman v. McPherson*, 691 So. 2d 37, 38 (Fla. 1st DCA 1997). Holland & Knight's central role in drafting the Confidential Settlement Agreement makes it such a central figure here. And because the Rule 4-1.9 conflict independently imputes to the entire firm, Holland & Knight cannot avoid disqualification by designating a non-witness lawyer from the firm to try the case. *See* R. Regulating Fla. Bar 4-1.10(a).

Moreover, Holland & Knight is facing a new conflict. It benefits from having X Strategies *lose* this lawsuit by virtue of the Confidential Settlement Agreement. If the Confidential Settlement Agreement is found to be a bar to this lawsuit, Utley and Stark Defense Industries' damages are relatively small, and thus the Firm's exposure to liability is small. But if the Confidential Settlement Agreement is found to not be a bar to this lawsuit, then the Firm's exposure is significant in light of the Firm's former clients' belief that the Agreement would bar such litigation. In other words, and notwithstanding Utley's emphatic denial of all liability, any hypothetical judgment entered against Utley would likely trigger litigation by Utley against Holland & Knight.

**III. Holland & Knight Should Immediately Produce All Relevant Emails and Communications.**

On November 10, 2026, Mr. Utley informed X Strategies that he was still in possession of his emails with his former attorney David Lisko. Upon review, some of those emails concerned X Strategies and were not limited to private privileged communications with Mr. Utley. Accordingly, and in abundance of caution, *all* emails to and from Mr. Lisko were emailed to X Strategies' attorney with a request to preserve and segregate the emails. Holland & Knight has yet to acknowledge that email or request.

Holland & Knight should be required, via a subpoena, request for production or other court order, to produce (i) all of its emails and communications with Derek Utley, (ii) all of its internal communications concerning the April 3, 2026 Confidential Settlement Agreement, and (iii) all of its emails and communications with Alex Bruesewitz that refer or relate to the April 3, 2026 Confidential Settlement Agreement or any prior discussion concerning a conflict of interest that would prevent Holland & Knight from being adverse to Derek Utley. Mr. Utley is aware that they exist and they were in his possession as recently as today.

Prior to filing this motion, and as part of his prefiling investigation, Utley requested documents and information from Holland & Knight. In response, the law firm produced only various versions of an email chain (dated between March 31 and

April 3, 2026), a copy of which is attached to Utley's sealed declaration. In its November 5, 2026 transmittal letter, the law firm wrote:

> Mr. Utley has never been a client of Holland & Knight in his individual capacity. He never signed an engagement letter with the Firm, never received legal advice from the Firm, never paid the Firm for legal services, and was never billed by the Firm.

*Id*. It is true Mr. Utley never signed an engagement letter, never personally paid a bill and was never billed by the firm. The lack of these formalities is legally irrelevant. *See Mansur v. Podhurst Orseck, P.A.*, 994 So. 2d 435, 438 (Fla. 3d DCA 2008).

It is, however, *demonstrably false* to state Derek Utley was never a client of the firm in his individual capacity and never received legal advice personally. The Court need not take Utley's word for it; the Court can review Holland & Knight's own emails and take testimony from Derek's former attorney David Lisko.

## CONCLUSION

For the reasons stated above, Holland & Knight must be disqualified.

Respectfully submitted,



Matthew Sarelson, Esq.
Florida Bar No. 888281
**SARELSON & SAJDERA, PLLC**
Attorneys for Defendants Derek Utley and Stark Defense Industries, Inc.
1601 Forum Place, Suite 202
West Palm Beach, Florida 33401
Telephone: (305) 773-1952

matt.sarelson@ssxlaw.com

**CERTIFICATE OF CONFERENCE**

Pursuant to S.D. Fla. Local Rule 7.1(a)(3), the undersigned counsel certifies that counsel for the movant conferred multiple times with counsel for Plaintiff X Strategies LLC via telephone and email in a good-faith effort to resolve the issues raised in this Motion, and the parties were unable to resolve them.

Matthew Sarelson, Esq.