**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

X STRATEGIES, LLC,

Plaintiff,

v. CASE NO.9:26-cv-81194-EA

DEREK UTLEY,
STARK DEFENSE INDUSTRIES
INC., ANNA WEISHEIMER, and
ANNA DICENZO FITNESS LLC.

Defendants.

___________________________/

**EXHIBIT A**

TO

AMENDED COMPLAINT

# EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement") is made and effective as of April 3, 2026 (the "Effective Date"), by and between X Strategies, LLC, a Florida limited liability company (hereinafter referred to as the "Company"), and Mr. Derek Utley ("Employee"). The Company and the Employee may be referred to herein as the "Parties" or individually as a "Party."

## PREAMBLE

A. The Company is a full service political and corporate media consulting company (the "Business").

B. As of the Effective Date, the Company shall begin to employ Employee as an employee of the Company holding the position of Chairman Emeritus and Executive Advisor to the CEO.

C. This Agreement supersedes all prior or contemporaneous negotiations, commitments, agreements, writings and discussions with respect to the subject matter of this Agreement, and all prior negotiations, commitments, writings, and discussions will have no force or effect.

NOW, THEREFORE, in consideration of the mutual promises and undertakings of the Parties hereinafter set forth, it is agreed as follows:

1. Representations of Employee. Employee hereby represents and warrants to the Company that Employee has made no misrepresentations, whether express or by omission, of any material fact regarding Employee's professional history or credentials. Employee acknowledges that the Company has reasonably relied on the accuracy of the foregoing representations by Employee in entering into this Agreement.

2. Employment Agreement. In reliance on the representations set forth in Section 1 above, Company hereby agrees to employ Employee and Employee hereby agrees to serve as an employee of the Company upon the terms and conditions hereinafter set forth and as directed by the Company's Chief Executive Officer.

3. Term of Employment and Termination.

(a) Employee's employment with the Company shall commence on the Effective Date and shall continue for a period of one (1) year unless terminated earlier pursuant to the terms expressed herein (the "Initial Term"). The Initial Term may be extended for additional terms if mutually agreed in writing, with the duration of the additional term stated in such writing, signed by Employee and the Company's Chief Executive Officer, at least thirty (30) days before the end of the Initial Term (each, an "Extension Term"). If the Initial Term or any Extension Term expires with no further extension, Employee shall automatically convert to an "at will" employee of the Company following the expiration of the later of the Initial Term or an Extension Term.

(b) The Company may terminate Employee for cause, with or without notice, if Employee fails to diligently and professionally perform Employee's job duties in adherence with professional or industry standards; if Employee violates the Company's policies or procedures; if Employee is charged with a felony or crime of moral turpitude; or if Employee commits an act which might tend to bring public disrepute, contempt, scandal, or ridicule on the Company.

(c) Employee may resign and terminate this Agreement upon thirty (30) days written notice. Upon Employee's termination of the Agreement, Employee shall receive all benefits required by law, any unpaid salary, and, within sixty (60) days, if Employee has been an employee of the Company for at least one (1) full year, the Company shall pay Employee for all accrued and not previously used vacation and sick time.

(d) The restrictive covenants in Section 8 below shall survive the termination of Employee's employment with the Company and the termination of this Agreement.

4. <u>Employee's Duties</u>.

(a) As of the Effective Date, Employee shall begin to or continue to be employed as the Company's Chairman Emeritus and Executive Advisor to the CEO and perform Employee's job duties described below. The actual schedule of days and hours to be worked by Employee shall be consistent with the schedule of days and hours customary in the media consulting industry for a Chairman Emeritus and Executive Advisor to the CEO. Employee shall devote Employee's full-time effort to performing Employee's job duties and shall not actively be employed working for any other employer or company. Employee may, however, have passive investments or passive income.

(b) Employee's duties shall include, but not be limited to, the following:

- Compliance with the Company's policies and procedures;
- Soliciting new clients to become clients of the Company;
- Manage client relationships for any Company client Employee is earning a commission payment from;
- Responsible for consistent business operations;
- Promote a positive work environment; and
- Communicate with the Company's Chief Executive Officer regarding business operations and sales.

(c) Employee shall comply with all applicable laws, regulations, and administrative orders relating to the conduct of the Company's affairs.

(d) Employee shall perform other or additional duties as the Company's Chief Executive Officer may from time-to-time direct.

5. Compensation. Employee will be paid an annual salary of $180,000, paid in twenty-six (26) equal installments in accordance with the Company's normal payroll practices. Employee shall also be paid commission payments as follows:

**New Company Clients**

For new clients Employee brings to the Company, Employee shall be paid a 20% commission on the Company's gross profits made off of payments made by the new client, to be paid one (1) month in arrears (minus any chargebacks) in accordance with the Company's normal payroll practices.

**Certain Existing Company Clients**

Employee shall be paid a 20% commission on the Company's gross profits made off of payments made by the following current Company clients, to be paid one (1) month in arrears (minus any chargebacks) in accordance with the Company's normal payroll practices:

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

Employee shall be paid a 10% commission on the Company's gross profits made off of payments made by [redacted], to be paid one (1) month in arrears (minus any chargebacks) in accordance with the Company's normal payroll practices.

Employee expressly agrees and covenants that the compensation received by Employee under this Agreement, as reasonably determined, shall satisfy and discharge in full all of Employee's claims upon Company for compensation.

6. Expense Reimbursement. During Employee's employment with the Company, the Company shall reimburse reasonable expenses incurred by Employee in the performance of Employee's duties, as approved by the Company's Chief Executive Officer.

7. Vacation and Sick Leave. Employee will be entitled to forty (40) hours of paid sick leave per year. Employee's paid sick leave time will not accumulate year-over-year. Employee, during Employee's first five (5) years of employment with the Company, will be entitled to eighty (80) hours of paid vacation per year. Employee, after five (5) years of employment with the Company, will be entitled to one hundred and twenty (120) hours of paid vacation per year. A maximum of one hundred and sixty (160) hours of unused vacation time may be carried over to the following year of employment. Any additional unused accrued vacation time will be forfeited and not carried over to the following year. No more than one hundred and sixty (160) hours of unused vacation time may be carried over.

8. Restrictive Covenants.

All restrictive covenants contained herein apply to the Company and the Company's subsidiaries and affiliates.

(a) Confidential Information and Non-Disclosure of Confidential Information. Employee acknowledges and agrees that during the course of Employee's employment with the Company, Employee has and will continue to become acquainted with certain trade secrets and other confidential information concerning the Company's operations including, but not limited to, pricing information, customer information, vendor information, marketing information and strategy, employee information, and financial and business strategy and planning information. Employee acknowledges that this information is owned by the Company, is confidential and proprietary and either presently or in the future may be utilized by the Company. This confidential information is property of the Company. During the term of this Agreement and forever thereafter, Employee will not disclose or cause to be disclosed in any manner (except as may be required by law or pursuant to court order), any such trade secrets or other confidential and proprietary information, directly or indirectly, to any third person or entity, including but not limited to, any direct or indirect competitor of the Company, or otherwise utilize any of this information in any way except as may be required during the course of, and pursuant to, Employee's duties with the Company or with Company's prior written consent. Employee agrees that Employee will hold all of the Company's confidential information in the strictest of confidences. Upon the termination of Employee's employment with the Company, or upon the request of the Company, at any time, Employee shall promptly deliver to the Company all documents, tapes, disks, or other storage

media and any other materials, and all copies thereof in whatever form, in the possession of Employee pertaining to the business of the Company, including, but not limited to, any such media and materials containing the Company's confidential and/or proprietary information.

(b) Non-Solicitation. During Employee's employment with the Company and for a one (1) year period of time thereafter, Employee shall not directly (whether as a partner, shareholder, agent, independent contractor, employee, or otherwise), or indirectly (whether through a Company, partnership, affiliate, subsidiary or otherwise): (i) solicit clients of the Company in existence on the date Employee last works for the Company; nor (ii) communicate with any persons or other business-related entities in order to induce, facilitate, or encourage the assignment of business opportunities away from Company.

(c) Non-Solicitation of Employees. Employee agrees that, during the term of this Agreement and for a one (1) year period of time following the termination of Employee's employment with the Company, Employee will not directly or indirectly, on Employee's own behalf or in the service or on behalf of others, solicit, divert, attempt to solicit, divert or induce or attempt to induce, any employee or independent contractor of the Company to discontinue their employment or work with the Company, whether or not such employees or independent contractors are full time, part time, or temporary.

(d) Non-Competition. Employee agrees that, during Employee's employment with the Company, Employee will not compete, directly or indirectly, against the Company.

(e) Non-Disparagement. During the Initial Term, any Extension Term, and for a period ending three (3) years after the date Employee's employment with the Company terminates, Employee shall not disparage or otherwise make derogatory or negative remarks or statements about the Company, its respective businesses, officers, employees, shareholders, members, managers, agents, or representatives, and neither shall take any action, encourage others, acquiesce, or assist in taking action to disparage, injure, discredit, or otherwise negatively portray the Company.

(f) Injunctive Relief. Employee recognizes that Employee's breach of any of the covenants or obligations contained in this Section 8 may result in irreparable injury to the Company, for which there is not an adequate remedy at law, and that injury and damages to the Company resulting from a breach may be immeasurable. Without limiting the rights or remedies, both legal and equitable, available to the Company, in the event of an actual or threatened breach, the Company shall be entitled to seek and obtain a temporary restraining order and/or a preliminary or permanent injunction against Employee, in state of federal court, without posting a bond or other security, which shall prevent Employee from engaging in any activities prohibited by this Section 8, or to seek and obtain such other relief against Employee as may be required to specifically enforce any of the covenants or obligations contained in this Section 8.

9. Intellectual Property. The Company is entitled to full ownership of, and any remuneration generated from, intellectual property of any kind created by Employee while Employee works for the Company, including without limitation, inventions, patents, copyrights,

software, etc., provided that Employee is entitled to sole ownership of any invention that Employee develops entirely on Employee's own time, and without using Company's equipment, supplies, computers, facilities or trade secret information; and, that does not relate to Company's business or Company's actual or demonstrably anticipated research or development, or results from any work performed by Employees for the Company.

10. Assignability and Binding Effect. The Company may assign, delegate, or transfer this Agreement and all of the Company's rights and obligations under this Agreement to any business entity that by merger, consolidation, or otherwise acquires all or substantially all of the assets of the Company or to which the Company transfers all or substantially all of its assets. Upon assignment, delegation or transfer, any affiliate, subsidiary, or business entity related to the Company shall be deemed to be substituted for the Company for all purposes of this Agreement. Executive does not have authority to and shall not assign or delegate this Agreement or any right, duty, obligation, or interest contained herein. Subject to the foregoing, this Agreement shall be binding upon the heirs, executors, administrators, and assigns of Employee and any successors in interest of Company.

11. Modification or Amendment. No change, amendment, or modification of this Agreement shall be valid unless it is in writing and signed by all Parties hereto. Only the Chief Executive Officer of the Company may sign on behalf of the Company.

12. Severability and Blue Penciling. If a court of competent jurisdiction makes a final determination that any term or provision of this Agreement is invalid or unenforceable, the remaining terms and provisions of this Agreement shall be unimpaired. The Company and Employee specifically authorize any such court making such determination to edit the invalid or unenforceable provision to allow this Agreement, and the provisions thereof, to be valid and enforceable to the fullest extent allowed by law.

13. Waiver. The waiver by any Party of compliance by any other Party with any provision of this Agreement shall not operate or be construed as a waiver of any other provision of this Agreement (whether or not similar), or a continuing waiver or a waiver of any subsequent breach by a Party of a provision of this Agreement. Performance by any Party of any act not required of it under the terms and conditions of this Agreement shall not constitute a waiver of the limitations on its obligations under this Agreement, and no performance shall stop that Party from asserting those limitations as to any further or future performance of its obligations.

14. Governing Law and Jurisdiction. The laws of the State of Florida shall govern the validity, performance, enforcement, interpretation and any other aspect of this Agreement, notwithstanding any state's choice of law provisions to the contrary. The Parties to this Agreement irrevocably consent to the jurisdiction and venue of the state and federal courts located in Palm Beach County, Florida, with respect to any and all actions related to this Agreement or the enforcement of this Agreement and the Parties to this Agreement hereby irrevocably waive any and all objections thereto.

15. Arbitration. Employee agrees that in the event Employee alleges the Company

breached this Agreement, Employee shall submit Employee's allegations of breach to American Arbitration Association binding arbitration in West Palm Beach, Florida. A single arbitrator, selected by the Parties pursuant to the applicable rules of the American Arbitration Association, shall be final and binding on the Parties.

16. Waiver of Jury Trial. EMPLOYEE KNOWINGLY AND WILLINGLY HEREBY WAIVES EMPLOYEE'S RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING UNDER, BASED UPON OR RELATED TO, THIS AGREEMENT. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY THE UNDERSIGNED EMPLOYEE, WHO ACKNOWLEDGE THAT NO ONE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.

17. Notices. All notices required or desired to be given under this Agreement shall be in writing and shall be deemed to have been duly given (i) on the date of delivery if delivered in-person on the Party to whom notice is to be given, (ii) on the date of receipt by the Party to whom notice is to be given if transmitted via email, (iii) on the third day after mailing if mailed to the Party to whom notice is to be given by registered or certified mail, return receipt requested, postage prepaid, or (iv) on the next business day if delivered by overnight delivery via a nationally recognized delivery service. Notice to the Company shall be delivered to the Company's Chief Executive Officer in-person, sent to the Chief Executive Officer at the Company's principal business address, or to the Chief Executive Officer's Company email address. Notice to Employee shall be delivered to Employee in-person, sent to such address for Employee as is last shown on the payroll records of the Company, or to Employee's personal or Company email address. Either Party may, by giving written notice to the other Party in accordance herewith, change the address or email address to which notice shall then be sent.

18. Material Performance. Each Party's material performance under the terms hereof is a condition to the other Party's performance under this Agreement.

19. Acknowledgment Regarding Counsel. Each Party hereto acknowledges and agrees that such Party has had the opportunity to be represented in the negotiations for the preparation of this Agreement by counsel of such Party's own choosing, and that if such Party has elected not to be represented by counsel in the negotiation and preparation of this Agreement, such election was made freely and voluntarily with full awareness of the consequences of the decision. In connection with the foregoing, Employee understands and acknowledges that Holland & Knight, LLP represents the Company (only). Each Party hereto further acknowledges and agrees that such Party has read this Agreement, and is fully aware of the contents and legal effect of this Agreement, and that such Party has executed this Agreement after independent investigation and without fraud, duress or undue influence. This Agreement shall be construed as if each Party were jointly and equally responsible for drafting it.

20. Headings. The subject headings of the sections of this Agreement are inserted for convenience purposed only and shall not be deemed to constitute part of this Agreement or to affect the construction of this Agreement.

21. Entire Agreement. This Agreement contains the entire agreement of the Parties with respect to the matters covered by this Agreement and supersedes any prior representations or agreements of the Parties with respect to the matters covered by this Agreement.

22. Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all such counterparts together shall constitute one and the same instrument. This Agreement shall become effective upon the execution of a counterpart hereof by each of the Parties hereto. Transmission by facsimile or email of signed signature pages shall be effective for delivery of signed counterparts of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement the day and year first written below.

**COMPANY:**

X STRATEGIES, LLC

By: DocuSigned by: Alex Bruesewitz 770B7AE96173441...

Name: Alexander Bruesewitz
Title: Chief Executive Officer

Date: 4/2/2026

**EMPLOYEE:**

By: DocuSigned by: Derek Utley E39EBD9E175D44A...

Print Name: Derek Utley

Date: 4/3/2026