**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

X STRATEGIES, LLC,
Plaintiff,

CASE NO.: 9:26-cv-81194-EA

v.

DEREK UTLEY, STARK
DEFENSE INDUSTRIES INC.,
ANNA WEISHEIMER, and
ANNA DICENZO FITNESS LLC,
Defendants.
_______________________________________/

**DEFENDANT ANNA WEISHEIMER'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR EX-PARTE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendant ANNA WEISHEIMER ("Weisheimer"), individually, by and through undersigned counsel, files this Response in Opposition to Plaintiff X STRATEGIES, LLC's ("Plaintiff" or "X Strategies") Motion for Ex-Parte Temporary Restraining Order and Preliminary Injunction (the "Motion") [ECF No. 17], solely to the extent Plaintiff seeks injunctive relief against Weisheimer individually, and states as follows:

## I. INTRODUCTION

Plaintiff seeks extraordinary injunctive relief against multiple Defendants based upon allegations that its former Chairman and Chief Financial Officer, Derek Utley ("Utley"), misappropriated millions of dollars from Plaintiff over several years. Although the Motion describes extensive financial misconduct allegedly committed by Utley, it improperly seeks to extend sweeping restrictions to Defendant Anna Weisheimer based principally upon her former romantic relationship with Utley, her receipt of financial transfers from him, and her ownership interest in Anna Dicenzo Fitness LLC. Specifically, Plaintiff seeks to freeze Weisheimer's personal Chase bank account ending in 3848 and prohibit her from transferring, selling, encumbering, or

otherwise disposing of personal property allegedly purchased with funds traceable to Plaintiff. Such extraordinary relief requires an individualized evidentiary showing that Plaintiff has not sufficiently made.

The Complaint asserts only three causes of action against Weisheimer individually: Count V for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); Count VI for unjust enrichment; and Count XI seeking imposition of a constructive trust. Notably, Plaintiff does not assert claims against Weisheimer for breach of fiduciary duty, civil theft, fraudulent misrepresentation, negligent misrepresentation, conversion, or breach of contract. Instead, those claims are directed against Utley, Stark Defense Industries Inc. ("Stark Industries"), or both. Accordingly, Plaintiff must demonstrate that the evidence supports extraordinary relief against Weisheimer under the particular causes of action actually asserted against her, rather than relying upon the allegations of wrongdoing attributed to other Defendants.

Plaintiff has not sufficiently established why these restrictions are necessary, how they are appropriately limited to property subject to its claimed equitable interest, or why less burdensome measures would be inadequate. For these reasons, the Motion should be denied as to Weisheimer individually or, alternatively, substantially narrowed.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff commenced this action on September 18, 2026, alleging that Utley misappropriated company funds while serving as Plaintiff's Chairman and Chief Financial Officer. According to the Complaint, Utley exercised exclusive control over Plaintiff's bank accounts, financial records, accounting, and internal financial operations. Plaintiff alleges that Utley used that authority to make unauthorized withdrawals, disguise personal expenditures as business expenses, transfer funds through various accounts and entities, and conceal the transactions from

Plaintiff's other representatives. These allegations principally concern conduct undertaken by Utley in his capacity as a corporate officer with access to Plaintiff's financial systems.

As to Weisheimer, Plaintiff alleges that she maintained a romantic relationship with Utley, received financial transfers and luxury goods from him, and held an ownership interest in Anna Dicenzo Fitness LLC. Plaintiff further alleges that Weisheimer knew of Utley's purported embezzlement and participated in the acquisition of a fitness studio using allegedly misappropriated funds. Weisheimer disputes the characterization of her personal relationship and receipt of financial support as evidence of participation in a fraudulent enterprise. The existence of a personal relationship, financial transfers, or ownership interest in a separate company does not, without further evidence, establish the particular elements of the claims asserted against her.

On November 17, 2026, the Court entered an Order requiring Plaintiff to serve the Motion upon Defendants by November 18, 2026, establishing a response deadline of November 23, 2026, at 12:00 p.m., and setting an in-person hearing for November 24, 2026, at 11:30 a.m. [ECF No. 30]. Weisheimer submits this opposition in accordance with the Court's Order and without waiving any available defenses concerning service of process or personal jurisdiction.

**III. LEGAL STANDARD**

A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly establishes its entitlement to relief. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). To obtain such relief, Plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury outweighs the harm the proposed injunction may cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *Id.* Failure to establish any one of these requirements is sufficient to warrant denial of preliminary injunctive relief.

The Supreme Court has emphasized that a preliminary injunction may issue only upon a showing that the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20–22 (2008). A mere possibility of injury is insufficient, and the movant must demonstrate that the threatened harm is sufficiently likely and imminent to justify judicial intervention before the merits are adjudicated. *Id.* Thus, allegations of past wrongdoing, standing alone, do not establish the necessity of preliminary injunctive relief absent a showing of threatened future injury.

The irreparable-harm requirement is particularly significant where the requested injunction seeks to restrain money or property before judgment. The Eleventh Circuit has explained that an injury is irreparable only where it cannot be adequately remedied through monetary relief. *Siegel v. LePore*, 234 F.3d 1163, 1176–77 (11th Cir. 2000). Nevertheless, courts have recognized that preliminary injunctive relief may be appropriate where a plaintiff establishes an equitable interest in specifically identifiable property and demonstrates a sufficiently imminent risk that such property will be dissipated or placed beyond recovery. See *Hudson National Bank v. Shapiro*, 695 F. Supp. 544, 550 (S.D. Fla. 1988). Accordingly, the fact that Plaintiff alleges the misappropriation of money does not categorically foreclose injunctive relief; rather, the relevant inquiry is whether Plaintiff has demonstrated an actual and imminent threat to property in which it asserts a sufficiently supported equitable interest.

Federal courts recognize important limitations upon their authority to restrain a defendant's assets before judgment where the purpose of the restraint is merely to secure satisfaction of a potential monetary recovery. In *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999), the Supreme Court held that a district court lacked authority to issue a

preliminary injunction restraining a defendant's transfer of assets in which the plaintiff claimed no lien or equitable interest, where the underlying action sought money damages.

Finally, Federal Rule of Civil Procedure 65 requires that any injunction state its terms specifically and describe in reasonable detail the acts restrained. Fed. R. Civ. P. 65(d)(1). Rule 65(c) further governs security for costs and damages sustained by a party subsequently found to have been wrongfully restrained. These safeguards are particularly important where Plaintiff seeks to restrict an individual's personal bank account and property before any adjudication of liability.

## IV. ARGUMENT

### A. Plaintiff Has Failed to Establish a Substantial Likelihood of Success on the Merits Against Weisheimer Individually.

#### 1. Plaintiff Has Not Established That Weisheimer Participated in the Operation or Management of a RICO Enterprise.

Plaintiff's sole federal cause of action against Weisheimer is Count V, alleging a violation of 18 U.S.C. § 1962(c). To establish liability under that provision, Plaintiff must demonstrate that Weisheimer conducted or participated, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity. The Supreme Court has held that participation in the conduct of an enterprise's affairs requires some degree of participation in its operation or management. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

The distinction is particularly significant given the allegations contained in Plaintiff's own Complaint. Paragraph 120 identifies Weisheimer among the alleged members of the purported enterprise, while paragraph 121 specifically alleges that Utley conducted or participated in the enterprise's affairs through a pattern of racketeering activity. The Complaint does not similarly identify the manner in which Weisheimer allegedly directed the enterprise's affairs or exercised operational authority over the purported scheme. Instead, Plaintiff repeatedly attributes exclusive

control over its banking, financial records, accounting, and allegedly fraudulent transactions to Utley.

Plaintiff also identifies wire fraud, bank fraud, money laundering, and mail fraud as the alleged predicate acts supporting its RICO claim. See Compl. ¶ 122. However, the factual allegations principally describe transactions allegedly initiated, directed, or concealed by Utley through his position at X Strategies and his control over various financial accounts. Plaintiff does not sufficiently distinguish between Weisheimer's alleged receipt of funds and her individual participation in the conduct constituting the asserted predicate offenses. Such a distinction is necessary because the receipt of financial benefits does not automatically establish participation in directing a racketeering enterprise.

Plaintiff relies heavily upon the forensic report prepared by Frank Holder, which identifies approximately $139,300 in transfers from Utley to Weisheimer over approximately ten weeks. Weisheimer's position is that these transfers consisted of personal gifts and financial support provided during their romantic relationship, rather than payments for participating in any alleged fraudulent scheme. Although the report identifies the transfers, their dates, and certain transaction descriptions, the receipt of financial support from a romantic partner does not independently establish that Weisheimer knew the funds were allegedly misappropriated or exercised any role in operating the alleged enterprise. Plaintiff must establish more than the existence of a financial connection between Weisheimer and Utley to satisfy the requirements of § 1962(c).

The Southern District of Florida's decision in *Hudson National Bank v. Shapiro*, 695 F. Supp. 544 (S.D. Fla. 1988), further illustrates why the existence of financial transactions with an alleged wrongdoer does not, standing alone, establish knowing participation in the underlying misconduct. In *Hudson*, although the court granted preliminary injunctive relief against defendants

who knowingly participated in a fraudulent credit-card operation, it declined to extend that relief to World Travel Concepts, Inc. ("WORLD"), notwithstanding WORLD's financial dealings with the entities involved in the fraud. The court specifically concluded that WORLD's use of those entities as factoring agents was "insufficient to show that there was any fraud on the part of WORLD, or that WORLD knew or should have known of the fraudulent activities" of those entities. *Id.* at 550. Similarly, although Plaintiff identifies substantial transfers from Utley to Weisheimer, the receipt of financial support during their romantic relationship does not independently establish that Weisheimer knew of Utley's alleged embezzlement, controlled his activities, or participated in directing the affairs of the alleged RICO enterprise.

Moreover, the forensic report attached to Plaintiff's Motion expressly acknowledges limitations in tracing the funds through the alleged sequence of transactions. Although the report identifies transfers between certain accounts, it does not establish that the funds appearing at each successive stage are necessarily the same funds previously transferred. Nor does it independently establish Weisheimer's knowledge concerning the source of the funds received from Utley. These limitations are material because Plaintiff seeks to use the transfers not merely as evidence of receipt, but as evidence of knowing participation in an alleged racketeering enterprise.

Plaintiff further alleges that Weisheimer knew Utley was embezzling funds and encouraged him to continue doing so. See Compl. ¶ 35. However, allegations contained in a pleading do not eliminate Plaintiff's burden to establish a substantial likelihood of success through the evidence submitted in support of its Motion. The Court must evaluate whether the forensic report, declarations, and supporting exhibits actually establish Weisheimer's knowing participation in the alleged predicate conduct, rather than treating Plaintiff's characterization of the relationship as conclusive. Without sufficient evidence connecting Weisheimer to the operation or management

of the alleged enterprise, Plaintiff has not established the requisite likelihood of success under § 1962(c).

**2. Plaintiff Has Not Sufficiently Established the Elements of Its Unjust Enrichment Claim Against Weisheimer Individually.**

Plaintiff also asserts a claim for unjust enrichment against Weisheimer under Florida law. To establish unjust enrichment, Plaintiff must demonstrate that it conferred a benefit upon Weisheimer, that Weisheimer knew of and accepted or retained that benefit, and that the circumstances make retention of the benefit inequitable without payment of its value. See *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997). The inquiry therefore requires consideration of the nature of the alleged benefit and the circumstances surrounding its receipt, rather than simply identifying a transfer of funds between two individuals.

Here, Plaintiff's forensic report identifies transfers from Utley to Weisheimer, but it does not conclusively establish that each transfer constituted a benefit conferred upon Weisheimer by Plaintiff. The report acknowledges that the transaction descriptions are labels supplied by the sender and that the underlying documents do not necessarily establish the ultimate source of every transferred dollar. Weisheimer's position that the transfers were personal gifts and relationship support also provides a materially different explanation for the payments than Plaintiff's assertion that they represented compensation or proceeds from participation in a fraudulent enterprise. The circumstances surrounding the transfers therefore remain disputed and require an individualized assessment.

Plaintiff further alleges that Weisheimer benefited from the proposed acquisition of a fitness studio through Anna Dicenzo Fitness LLC. However, Plaintiff must distinguish between property allegedly acquired or held by that separate entity and benefits actually received or retained

by Weisheimer individually. An ownership interest in an LLC does not automatically establish personal ownership of all property allegedly acquired by the LLC or personal receipt of every financial benefit attributed to the entity. Accordingly, Plaintiff cannot establish the scope of Weisheimer's alleged unjust enrichment merely by attributing all, if any, of the LLC's purported transactions to her.

However, the forensic report itself demonstrates the importance of this distinction. Although it identifies communications concerning a proposed studio acquisition, a draft asset purchase agreement, and the formation of Anna Dicenzo Fitness LLC, it does not identify an executed purchase agreement, closing statement, bill of sale, or wire confirming the source of purchase funds. Thus, the report does not conclusively establish that the alleged transaction was completed using funds misappropriated from Plaintiff. Without sufficiently identifying the benefit allegedly conferred upon Weisheimer individually and the circumstances making its retention inequitable, Plaintiff has not established that this claim justifies the broad preliminary relief requested.

**3. Plaintiff Has Not Established a Sufficient Equitable Basis for Imposing a Constructive Trust Over Weisheimer's Personal Assets.**

Count XI seeks imposition of a constructive trust upon assets allegedly acquired using funds misappropriated from Plaintiff. Under Florida law, a constructive trust is an equitable remedy designed to prevent the unjust retention of property where circumstances warrant treating property held by one person as belonging beneficially to another. *Provence v. Palm Beach Taverns, Inc.*, 676 So. 2d 1022, 1025 (Fla. 4th DCA 1996). Importantly, a constructive trust is not itself a substitute for establishing an underlying basis for equitable relief. In *Collinson v. Miller*, 903 So. 2d 221, 228 (Fla. 2d DCA 2005), the court explained that, because a constructive trust is a remedy, it must be imposed upon an established cause of action. Although Florida courts have differed as

to whether constructive trust may be pleaded as an independent cause of action, *see Abele v. Sawyer*, 747 So. 2d 415, 416 (Fla. 4th DCA 1999), the existence of a separately pleaded constructive-trust count does not relieve Plaintiff of its burden to demonstrate a substantial likelihood of entitlement to the equitable remedy sought.

Here, Plaintiff's constructive-trust theory necessarily depends upon establishing an underlying basis for equitable recovery against Weisheimer and demonstrating that the particular property sought to be restrained is sufficiently connected to Plaintiff's asserted equitable interest. Although Plaintiff alleges that Weisheimer received funds misappropriated by Utley, the receipt of those funds does not, standing alone, establish that every asset presently held by Weisheimer constitutes property properly subject to a constructive trust. Moreover, while a constructive trust may be imposed in appropriate circumstances even where the recipient did not personally participate in the underlying misconduct, Plaintiff must nevertheless demonstrate a sufficient equitable basis for imposing that remedy upon the particular property at issue.

The Southern District of Florida's decision in *Hudson National Bank v. Shapiro*, 695 F. Supp. 544 (S.D. Fla. 1988), illustrates the evidentiary showing supporting such relief. There, the court recognized that Florida law permits imposition of a constructive trust where wrongfully obtained funds can be traced into a particular bank account. *Id.* at 550 (citing *ITT Community Development Corp. v. Barton*, 457 F. Supp. 224 (M.D. Fla. 1978)). The court found that the plaintiff had successfully traced fraudulently obtained funds into specifically identified accounts and concluded that those funds constituted the *res* of a constructive trust. *Id.* The court further determined that the defendants' established practice of transferring funds among different accounts created a substantial risk that the identifiable property would be dissipated absent injunctive relief.

Thus, the injunction in *Hudson* preserved property in which the plaintiff had demonstrated an identifiable equitable interest, supported by evidence of threatened dissipation.

The circumstances presented here are materially different. Although Plaintiff's forensic report identifies approximately $139,300 in historical transfers to Weisheimer, it acknowledges limitations in tracing funds through successive transactions and does not establish the present composition of her Chase account ending in 3848. The report identifies transfers from Utley to Weisheimer, but it does not demonstrate that the entirety of the funds presently maintained in her personal account originated from Plaintiff or otherwise constitutes property subject to a constructive trust. Nor does Plaintiff identify comparable evidence that Weisheimer has engaged in a pattern of transferring funds among accounts, concealing assets, or undertaking transactions intended to frustrate recovery. Unlike *Hudson*, Plaintiff has not sufficiently demonstrated that the breadth of the proposed restraint corresponds to an identified *res* threatened with dissipation. Further, the report cannot determine that the funds received by Utley and transferred to Weisheimer constituted misappropriated funds.

Similarly, *Astrove v. Doe*, No. 22-CV-80614-RAR, 2022 WL 2805345 (S.D. Fla. June 17, 2022), does not support the sweeping relief requested against Weisheimer. In *Astrove*, the court granted preliminary injunctive relief where the plaintiff presented evidence that the defendant directly induced the transfer of cryptocurrency through a fraudulent investment platform and traced the stolen assets through blockchain analysis to identifiable cryptocurrency wallets. The requested restraint was supported by particularized evidence connecting the disputed assets to the alleged fraud. Here, by contrast, Plaintiff does not allege that Weisheimer induced X Strategies to transfer funds to her or exercised control over the accounts through which Utley allegedly misappropriated company funds. While the forensic report identifies transfers received by

Weisheimer, Plaintiff has not established that any funds presently held in her Chase account are identifiable proceeds of the alleged misconduct. The particularized evidentiary showing supporting equitable preservation in *Astrove* is therefore distinguishable from the present record.

The same deficiency extends to Plaintiff's attempt to restrain Weisheimer's personal property. Although Plaintiff alleges that Utley purchased luxury goods for Weisheimer, the mere existence of gifts or expenditures during their romantic relationship does not independently establish that each item identified in the proposed injunction was purchased using funds traceable to X Strategies or that Weisheimer was aware the gifts were bought with alleged stolen funds. Plaintiff must demonstrate an appropriate connection between the property sought to be preserved and its asserted equitable interest. Otherwise, the proposed injunction risks restraining assets based upon their association with Weisheimer rather than upon a sufficiently demonstrated equitable claim to the assets themselves.

Accordingly, although Plaintiff has asserted unjust-enrichment and constructive-trust theories against Weisheimer, the existence of those claims does not independently establish a substantial likelihood of entitlement to the particular equitable relief requested. Under *Collinson*, the remedy of constructive trust must rest upon an established substantive basis for relief; under *Hudson* and *Astrove*, the preservation of allegedly misappropriated property must be supported by evidence appropriately connecting the disputed assets to the asserted equitable interest. Plaintiff has not sufficiently established that the entirety or even any of Weisheimer's personal Chase account, her personal property, or any identified business asset constitutes property subject to the constructive trust it seeks to impose. Accordingly, the present record does not justify the sweeping preliminary restraints requested against Weisheimer.

**B. Plaintiff Has Failed to Establish That Weisheimer Presents an Actual and Imminent Threat of Irreparable Harm.**

The second prerequisite for preliminary injunctive relief requires Plaintiff to establish that irreparable injury is likely to occur absent an injunction. *Winter*, 555 U.S. at 20–22; *Siegel*, 234 F.3d at 1176–77. Speculation concerning what a defendant might do with personal assets is insufficient to satisfy this requirement. Rather, Plaintiff must identify a sufficiently concrete and imminent threat that cannot be adequately addressed through ordinary legal remedies. This requirement is particularly important where Plaintiff seeks to restrain personal assets before establishing liability.

Plaintiff's allegations concerning dissipation overwhelmingly relate to Utley's purported conduct. The Motion describes Utley's alleged gambling activities, transfers among financial accounts, concealment of transactions, and continued efforts to divert Plaintiff's business opportunities. However, the fact that Plaintiff attributes such conduct to Utley does not establish that Weisheimer engaged in comparable conduct or presently intends to conceal or dissipate disputed property. The irreparable-harm inquiry must be individualized, particularly where Plaintiff seeks to impose substantial restrictions upon a defendant whose alleged conduct differs materially from that of the principal alleged wrongdoer.

As to Weisheimer, Plaintiff principally relies upon allegations concerning travel, attendance at social events, and possession of designer goods. Specifically, the Motion references travel to New York, attendance at parties, time spent on yachts, and the display of luxury items on social media. Weisheimer's attendance at luxury events, participation in exclusive trips, and access to high-end goods and experiences are attributable to her professional career as a social media influencer. Through her established social media presence, personal brand, and public image, Weisheimer receives invitations to such events and opportunities as part of her work promoting

her likeness and cultivating her online following. Such allegations do not establish who paid for the referenced activities, whether any expenditures were made using funds traceable to Plaintiff, or whether Weisheimer has attempted to conceal or dispose of property to frustrate a potential judgment. Participation in social activities, even expensive ones, is not equivalent to evidence of imminent asset dissipation.

Moreover, Plaintiff has not sufficiently identified any recent transaction by Weisheimer demonstrating an intention to remove assets from the Court's reach. The forensic report identifies historical transfers occurring between December 2025 and February 2026, but the existence of those transfers does not establish a present threat that Weisheimer will dissipate funds in anticipation of an adverse judgment. Plaintiff does not establish that Weisheimer has attempted to close the identified Chase account, transfer its contents to undisclosed accounts, conceal assets, or otherwise interfere with the judicial process. Without evidence of such conduct, Plaintiff's assertion of imminent irreparable injury remains substantially inferential.

The distinction between the present record and the circumstances supporting injunctive relief in *Hudson* and *Astrove* is particularly significant to the irreparable-harm inquiry. In *Hudson*, the court found that the defendants repeatedly changed bank accounts and factoring agents, creating an ongoing risk that funds would be transferred beyond the plaintiff's reach. Similarly, in *Astrove*, the court considered the movement of stolen cryptocurrency through identifiable wallets and the ease with which such assets could be transferred or concealed. Plaintiff identifies no comparable conduct by Weisheimer, such as repeatedly changing accounts, concealing funds, transferring property to undisclosed recipients, or otherwise taking steps to frustrate recovery. Instead, Plaintiff relies substantially upon her receipt of historical transfers by Utley and

allegations concerning her personal lifestyle, neither of which independently demonstrates an imminent threat that the assets sought to be restrained will be dissipated.

Accordingly, Plaintiff has failed to demonstrate that Weisheimer herself presents an actual and imminent threat of irreparable harm sufficient to warrant the extraordinary restrictions requested. It is important to separate Utley's actions from Weishemer's. The Court should not infer a risk of dissipation merely from Weisheimer's relationship with Utley, the historical receipt of financial support, or allegations concerning her personal lifestyle. Absent a particularized evidentiary showing, the irreparable-harm requirement remains unsatisfied as to Weisheimer individually.

**C. The Balance of Equities Weighs Against the Sweeping Restrictions Requested Against Weisheimer.**

The third requirement for preliminary injunctive relief requires the Court to consider whether the threatened injury to Plaintiff outweighs the harm that the proposed injunction would impose upon Weisheimer. *Siegel*, 234 F.3d at 1176. This inquiry must account for the actual scope of the requested restrictions and the consequences of imposing them before liability has been established. Where Plaintiff seeks to freeze an individual's personal bank account, the potential hardship cannot be dismissed merely because Plaintiff alleges that some historical transfers involved disputed funds.

Plaintiff's proposed order would prohibit Weisheimer from withdrawing, spending, transferring, or otherwise using any funds maintained in her identified Chase account. Such a restriction could interfere with ordinary personal financial obligations, including housing, utilities, transportation, and other necessary living expenses, regardless of whether those expenditures involve funds traceable to Plaintiff. The Motion does not meaningfully address these potential consequences or propose a mechanism for distinguishing disputed assets from funds needed for

ordinary expenses. As a result, the proposed injunction places the burden of Plaintiff's unresolved tracing allegations upon Weisheimer before the merits of the claims against her have been adjudicated. The proposed relief therefore risks restricting Weisheimer's use of property without sufficiently establishing that Plaintiff possesses a cognizable equitable interest in each item. The balance of equities does not favor imposing restrictions broader than necessary to preserve property genuinely at issue.

By contrast, Plaintiff retains the ability to pursue its claims, obtain discovery concerning the disputed transfers, and seek appropriate relief upon a sufficient evidentiary showing. Denial of the sweeping restrictions requested against Weisheimer would not prevent Plaintiff from litigating its claims or establishing its asserted rights to particular property. If Plaintiff subsequently develops evidence identifying specific assets subject to an equitable interest and an actual threat of dissipation, it may seek appropriately tailored relief. The availability of these procedures weighs against imposing an unnecessarily broad injunction at this preliminary stage.

**D. Plaintiff Has Not Established That the Requested Restrictions Against Weisheimer Serve the Public Interest.**

The fourth requirement for preliminary injunctive relief concerns whether the requested injunction would be adverse to the public interest. *Winter*, 555 U.S. at 20; *Siegel*, 234 F.3d at 1176. Although the public has a legitimate interest in preventing fraud and preserving property that may be subject to restitution or equitable recovery, it also has an interest in ensuring that extraordinary judicial remedies are imposed only upon a sufficient evidentiary and legal showing. These interests are not served by treating every person associated with an alleged wrongdoer as automatically subject to the same restrictions.

Here, Plaintiff seeks to restrain Weisheimer’s personal finances based solely upon disputed allegations concerning the source and purpose of funds transferred to her during a romantic

relationship. Significantly, Weisheimer relies upon the funds maintained in this bank account to finance her legal defense in this very action. Freezing these funds, particularly in the absence of sufficient evidence warranting such extraordinary relief, would substantially prejudice Weisheimer's ability to defend herself by depriving her of the financial resources necessary to retain counsel and meaningfully participate in these proceedings. The public interest does not favor imposing a blanket freeze on an individual's personal bank account merely because Plaintiff alleges that the individual who provided those funds engaged in financial misconduct. Rather, the public interest is best served by requiring Plaintiff to satisfy the stringent requirements of Rule 65 and ensuring that any restrictions imposed are narrowly tailored to identifiable property properly subject to equitable relief. Such an approach preserves legitimate equitable interests while safeguarding the procedural rights of individuals whose liability has yet to be established.

The Eleventh Circuit's decision in *Levi Strauss & Co. v. Sunrise International Trading Inc.*, 51 F.3d 982 (11th Cir. 1995), further illustrates why the public interest does not favor the imposition of sweeping preliminary restrictions absent an adequate evidentiary basis. In *Levi Strauss*, the court affirmed a preliminary injunction against defendants involved in an extensive counterfeit-merchandise operation, where testimony, seized business records, invoices, and correspondence directly connected the individual defendants to the underlying unlawful conduct. *Id.* at 985–86. The injunction served to prevent continued trademark infringement and preserve assets potentially available to satisfy an equitable accounting of profits under the Lanham Act. *Id.* at 987. Unlike the defendants in *Levi Strauss*, Weisheimer is not alleged to have directly controlled Plaintiff's financial accounts, executed the alleged misappropriations, or participated in an ongoing commercial scheme against Plaintiff. Rather, Plaintiff principally relies upon her receipt of transfers from Utley during their romantic relationship and allegations concerning a proposed

fitness-studio acquisition, without sufficiently establishing that she knowingly participated in Utley's alleged wrongdoing.

Moreover, although *Levi Strauss* recognized the district court's authority to freeze assets in aid of equitable relief, the Eleventh Circuit expressly declined to determine whether the injunction was overly broad insofar as it restrained assets unrelated to the alleged unlawful activity, because the defendants had not first sought modification of the freeze before the district court. *Id.* at 987–88. Here, Weisheimer expressly challenges the breadth of Plaintiff's proposed injunction before its entry, particularly insofar as it seeks to freeze her entire personal Chase account without sufficiently establishing that all funds presently maintained therein are subject to Plaintiff's asserted equitable interest. The public interest in preserving potentially recoverable property must be balanced against the equally important interest in preventing unjustified restraints upon an individual's personal assets before liability has been established. Accordingly, *Levi Strauss* does not support imposing the requested sweeping injunction against Weisheimer on the present evidentiary record.

**E. Alternatively, Any Injunctive Relief Must Be Narrowly Tailored and Supported by Appropriate Security.**

Even if the Court concludes that some preliminary relief is warranted, the proposed injunction should be substantially narrowed as to Weisheimer. Rule 65(d)(1) requires that an injunction describe in reasonable detail the acts restrained, and the scope of relief must correspond to the legal and evidentiary basis supporting its issuance. The Court should therefore distinguish between specific property sufficiently shown to be subject to Plaintiff's claimed equitable interest and unrelated assets belonging to Weisheimer. A complete freeze of her personal Chase account is not justified merely by evidence that the account historically received transfers from Utley.

At a minimum, any order should identify the particular funds or property restrained and establish a sufficient evidentiary basis for connecting those assets to Plaintiff's asserted equitable claim. The Court should also consider whether less restrictive measures could adequately preserve the status quo without prohibiting Weisheimer from conducting ordinary personal financial transactions. Any restrictions should be limited to the property reasonably necessary to preserve the Court's ability to grant appropriate equitable relief upon a final adjudication. Such tailoring would address Plaintiff's stated preservation concerns without imposing unnecessarily broad restraints.

Furthermore, Federal Rule of Civil Procedure 65(c) requires consideration of appropriate security for the payment of costs and damages sustained by a party found to have been wrongfully restrained. Where Plaintiff seeks a complete freeze of a personal bank account and restrictions upon personal property, the potential consequences of an erroneous injunction are substantial. Plaintiff should not be permitted to obtain such restrictions without an appropriate assessment of the security necessary to protect Weisheimer against damages arising from wrongful restraint. Accordingly, if the Court grants any injunctive relief, Weisheimer requests that it require an appropriate bond or other security consistent with Rule 65(c).

**V. CONCLUSION**

Plaintiff's Motion seeks extraordinary relief against Weisheimer based principally upon her former romantic relationship with Utley, historical transfers of approximately $139,300, her ownership interest in Anna Dicenzo Fitness LLC, and allegations concerning her personal lifestyle. Although these circumstances may be relevant to Plaintiff's underlying claims and may warrant further discovery, they do not automatically establish that Weisheimer knowingly participated in the operation or management of a RICO enterprise or that every asset in her possession is subject

to Plaintiff's asserted equitable interest. Nor do they establish an actual and imminent threat that Weisheimer will dissipate property in order to frustrate a potential judgment.

Plaintiff's forensic report contains significant limitations concerning the source and tracing of particular funds, the circumstances surrounding the transfers to Weisheimer, and the alleged acquisition of a fitness studio. Nevertheless, Plaintiff seeks a complete freeze of Weisheimer's identified personal bank account and broad restrictions upon her personal property. Such relief exceeds what Plaintiff has sufficiently demonstrated is necessary to preserve identifiable disputed assets. The extraordinary nature of the requested injunction requires a more particularized showing than Plaintiff has provided.

Accordingly, Plaintiff has failed to establish all four prerequisites for preliminary injunctive relief against Weisheimer individually. Alternatively, any relief should be narrowly confined to specifically identified property supported by an adequate evidentiary showing and should include appropriate protections against wrongful restraint.

**WHEREFORE**, Defendant **ANNA WEISHEIMER**, individually, respectfully requests that this Court enter an Order:

A. DENYING Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 17] as to Defendant Anna Weisheimer individually;

B. Alternatively, limiting any preliminary injunctive relief to specifically identified funds or property sufficiently demonstrated to be subject to Plaintiff's asserted equitable interest;

C. Declining to impose a blanket freeze upon Weisheimer's personal Chase account ending in 3848 absent a sufficient evidentiary showing justifying such relief;

D. Requiring that any injunction comply with the specificity requirements of Federal Rule of Civil Procedure 65(d) and that Plaintiff provide appropriate security pursuant to Rule 65(c); and

E. Granting such other and further relief as this Court deems just and proper.

By: */s/Jose Teurbe-Tolon*
Jose Teurbe-Tolon, ESQ.
Fla. Bar No. 87791

XANDER LAW GROUP, P.A.
25 S.E. 2nd Avenue, Suite 808
Miami, Florida 33131
Telephone: (305) 767-2001
service@xanderlaw.com
matt@xanderlaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 22, 2026, a true and correct copy of the foregoing was electronically filed through the Court's CM/ECF system, which will provide notice to all counsel of record registered to receive electronic service.

By: */s/Jose Teurbe-Tolon*
Jose Teurbe-Tolon, ESQ.
Fla. Bar No. 87791