**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
Case No. 9:26-cv-81194-EA

X STRATEGIES, LLC

Plaintiff,

v.

DEREK UTLEY, *et al.*,

Defendants.
______________________________________/

**DEFENDANTS DEREK UTLEY & STARK DEFENSE INDUSTRIES' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION & DEFENDANTS' CROSS-MOTION FOR SANCTIONS[1]**

Defendants Derek Utley and Stark Defense Industries, Inc. (together, "Defendants") file this response in opposition to Plaintiff X Strategies, LLC's Motion for Ex-Parte Temporary Restraining Order and Preliminary Injunction (the "Motion").[2] Defendants also file their cross-motion for sanctions for fraud on the court for Plaintiff and its attorneys' gross violation of the duty of candor.

***Introduction***

X Strategies asks the Court to freeze every dollar in seven bank and brokerage accounts based upon a single affidavit containing nothing but inadmissible hearsay and rank speculation. The Motion, the Complaint and Amended Complaint, omits dispositive facts

[1] Defendants are not waiving the verified motion to disqualify their former attorneys Holland & Knight and respectfully suggest that the Court defer any substantive merits ruling, including this motion, until after the disqualification motion is resolved. This is particularly important here because most of this lawsuit is barred by a Confidential Settlement Agreement drafted by and related emails sent from Holland & Knight Partner David Lisko, who is a material witness. The disqualification, not the TRO, should be expedited and scheduled for an evidentiary hearing no later than mid-December.

[2] Defendants are not responding to the Amended Motion for a TRO which was filed under seal and served on 7:11pm on Friday, November 20, 2026. That has not been timely served or set for a hearing. Plaintiff is pursuing emergency relief where there is no emergency.

that preclude most of this lawsuit and the injunction motion. Plaintiff has no excuse for the omissions given that Holland & Knight is its attorney here and was the attorney who handled the settlement. The law firm knew exactly what is was doing and the omission (especially in an *ex parte* motion) is a fraud on the Court and is sanctionable misconduct.

On April 3, 2026, X Strategies' sole owner, The Bruz Corporation ("Bruz"), and its principal, Alexander Bruesewitz, settled these very (baseless) accusations of "misappropriation, civil theft, embezzlement, and fraud." As part of that settlement, they and their "affiliates, parent companies, subsidiaries" released Utley and Stark Industries from all claims, "known or unknown, from the beginning of time through the date of the Effective Date." X Strategies is Bruz's wholly owned subsidiary, and its claims rest on the same transfers that were settled. The release alone defeats any substantial likelihood of success on the pre-April 3 claims that drive the requested asset freeze.

But it gets worse. As part of Utley's April 3 separation, the parties agreed that the approximately $3.75M (which was merely an estimate at the time) that X Strategies then and now claim was stolen and that Derek Utley claims was a distribution, was treated by the parties as a distribution. Ironically, it was David Lisko at Holland & Knight who confirmed via email: "The Bruz Corporation will forgive approximately $3,750,000 in distributions that Stark Defense Industries, Inc. received from X Strategies that The Bruz Corporation did not receive." If both members of the LLC at the time agreed that the "extra" money that went to Utley would be treated as a distribution, that Utley could keep the money, and it was memorialized by Holland & Knight, how is Holland & Knight filing a lawsuit five months later claiming that the "extra" money that went to Utley was actually stolen? X Strategies did two things entirely inconsistent with the claims in this lawsuit – (i) it

knowingly let him keep the money and (ii) it hired him as an employee the same day. No company that believed its Chairman and CFO had just stolen millions of dollars would forgive the money, name him "Chairman Emeritus and Executive Advisor to the CEO," and pay him $180,000 a year plus commissions to manage its client relationships. X Strategies' own conduct is clear evidence that it did not believe then, and cannot credibly claim now, that Utley stole the money. Under Florida law, that conduct also constitutes waiver and estoppel.

The Motion fails for independent reasons as well. The Eleventh Circuit forbids freezing a defendant's assets to secure a potential money judgment. The narrow equitable exception reaches only specific property traced to the wrong, and the proposed order freezes whole accounts that X Strategies' own expert does not and cannot trace. Its "expert" has identified outgoing transfers from X Strategies, but outgoing transfers alone mean nothing. There is no evidence tracing a specific *unlawful* transfer to a specific pool of money. Without citing Rule 64 or complying with the applicable Florida statute, X Strategies is asking for a prejudgment writ of attachment to all of the Defendants' money – which is prohibited by the Eleventh Circuit.

Alex Bruesewitz, X Strategies' sole owner, must testify and provide actual, admissible evidence to support the claims. Plaintiff has provided zero admissible evidence to support any of the specious allegations. Defendants are confident Bruesewitz' own testimony will undermine the Amended Complaint and the Motion and Defendants are eager to cross-examine him. Holland & Knight partner David Lisko, the Defendants' former personal attorney and the Plaintiff's corporate attorney, is also a material witness.

He drafted the Confidential Settlement Agreement after grossly misleading Utley in a failed attempt to obtain informed consent.

Finally, the non-solicitation injunction rests on a fundamental misunderstanding of Florida law. The Employment Agreement intentionally omits a post-separation non-compete. The Agreement merely has a bland non-solicitation provision. And the definition of solicitation in Florida is quite narrow. X Strategies cannot and has not identified a single client who was "solicited" by Utley within the meaning of Florida law.

***Background***

**A. The April 3, 2026 Settlement.** Utley and Bruesewitz each owned 50% of X Strategies, Utley through Stark Industries and Bruesewitz through Bruz. Disputes arose in which Bruesewitz and Bruz accused Utley and Stark Industries of "misappropriation, civil theft, embezzlement, and fraud related to at least $3,750,000 in Company funds Utley transferred from the Company to himself in 2025 and 2026."[3] To resolve those disputes, Stark Industries agreed to transfer "its 50% ownership interest in the Company to Bruz in exchange for Bruesewitz and Bruz releasing their claims against Stark and Utley." The Confidential Settlement Agreement would not be "deemed executed and enforceable" until the Membership Interest Purchase Agreement transferring Stark Industries' entire interest to Bruz was also executed. Section 5.2 provides:

> Bruesewitz and Bruz, including any past or present representatives, successors, affiliates, parent companies, subsidiaries, owners, agents, executives, assigns, heirs, and any person or entity who can make a claim on Bruesewitz and/or Bruz's behalf (collectively, the "Bruesewitz Releasors"), hereby releases, acquits, and forever discharge Utley and Stark . . . from any and all damages, causes of action, claims, debts, or liabilities of any kind that have been made or could have been made by the Bruesewitz Releasors against

[3] Utley, for his part, accused Bruesewitz of redirecting then-existing clients of X Strategies or other potential corporate opportunities to himself or his companies, The Bruz Corporation and ABIH, LLC.

> the Utley Releasees, whether known or unknown, from the beginning of time through the date of the Effective Date.

When the Settlement Agreement took effect, Bruz held 100% of X Strategies.

**B. The Motion and the Proposed Order.** X Strategies sued Utley, Stark Industries, Anna Weisheimer, and Anna Dicenzo Fitness LLC, and then moved *ex parte*, certifying that it "has not made efforts to give notice to Defendants." X Strategies never mentions the Settlement Agreement in any of its pleadings or motions – this is deliberate and deceitful. It seeks to freeze assets "traceable to the stolen funds" and to enforce the non-solicitation provisions of Utley's Employment Agreement. The proposed order goes further than that description. It freezes "any funds located in the accounts listed below," meaning seven accounts held by Stark Industries, Utley, and Weisheimer. It also restrains "any items purchased with funds traceable to X Strategies," and it defers any bond until the hearing. The Court declined to proceed ex parte and set this matter for a hearing on notice. Make no mistake, X Strategies is seeking an order freezing all of the Defendants' accounts, without exception, because it believes – mistakenly – that it will eventually obtain a seven-figure judgment. This is not permissible.

***Legal Standard***

"[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion as to . . . four prerequisites," and "[f]ailure to establish any of the four prerequisites is fatal." *Associated Builders & Contractors v. Gen. Servs. Admin.,* 174 F.4th 26, 34 (11th Cir. 2026). The asserted irreparable injury "must be neither remote nor speculative, but actual and imminent," and without it relief is improper even where likelihood of success is shown. *Siegel v. LePore*, 234 F.3d 1163, 1176–1177 (11th Cir. 2000). Where the papers conflict, the Court should resolve credibility

through live testimony rather than "showing a preference for one piece of paper over the other." *Theni Guru Krishna Textile Mills (P), Ltd. v. World's Glob. Source, LLC,* 2021 WL 2621211, *5 (N.D. Ga. Feb. 17, 2021). Defendants object to an injunction on the papers, particularly in light of the supporting affidavits' admissibility shortcomings; the November 24 hearing is and should be evidentiary.

***Argument***

**I. X Strategies Cannot Show a Substantial Likelihood of Success Because Its Pre-April 3, 2026 Claims Were Released.**

**A. The release covers every claim based on the pre-closing transfers.**

Under Florida law, "a general release will ordinarily be regarded as embracing all claims which have matured at the time of its execution," and courts give effect to the intent "expressed in the document itself." *Tim-Minn Inc. v. Tim Hortons USA Inc.,* 2022 WL 18023325, *6 (S.D. Fla. Sept. 29, 2022). The Eleventh Circuit has enforced a release of claims "whether known or unknown . . . from the beginning of time through the Effective Date" to bar claims arising from events before the release, rejecting an argument that would "unreasonably restrict the meaning of the provision." *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 721 F. App'x 865, 872 (11th Cir. 2018). A party that releases "any and all claims" and intends to keep some of them "should have added words of reservation." *Coral Gables Imported Motorcars, Inc. v. Fiat Motors of N. Am., Inc.*, 673 F.2d 1234, 1238–1239 (11th Cir. 1982). Section 5.2 contains no reservation. It releases "any and all damages, causes of action, claims, debts, or liabilities of any kind that have been made or could have been made," whether "known or unknown."

Every theory supporting the requested freeze rests on transfers before April 3, 2026. The Motion describes a scheme running "from 2021 through 2026." These are the same "Company funds Utley transferred from the Company to himself in 2025 and 2026" that the parties expressly settled. All pre-April 3 conduct was released and Utley was permitted to keep the distributions.

**B. X Strategies is a Bruesewitz Releasor.** The release does not run only from Bruesewitz and Bruz. The defined "Bruesewitz Releasors" expressly include their "affiliates, parent companies, subsidiaries, owners, . . . and any person or entity who can make a claim on Bruesewitz and/or Bruz's behalf." When the Settlement Agreement became effective, Bruz owned all of X Strategies, and the agreement could not take effect without that transfer. Controlled affiliates and subsidiaries that fall within a release's defined class of releasors are "bound by the General Release." *Tim Hortons*, 2022 WL 18023325, *9. Any other reading would make the settlement meaningless. The released accusations concerned "Company funds," meaning X Strategies' funds. If the company Bruz now wholly owns could sue on the very transfers Bruz released, Stark Industries would have surrendered its 50% interest in exchange for nothing. Courts prefer "an interpretation which gives a reasonable meaning to all provisions of a contract" over one that "leaves a part useless or inexplicable." *Viridis Corp.,* 721 F. App'x at 872.

**C. Later-discovered "fraud" does not avoid the release.** X Strategies may argue that its forensic audit uncovered more than Bruz knew. The release expressly covers "unknown" claims. Florida law independently treats fraud claims as waived where the releasing party "had actual or imputed knowledge of the facts constituting the alleged fraud at the time the subsequent agreement was made." *Coral Gables Imported Motorcars, Inc.*, 673

F.2d at 1240. Bruesewitz and Bruz had already accused Utley of "misappropriation, civil theft, embezzlement, and fraud" and had quantified the alleged misappropriation before they signed. X Strategies' own declarant describes reviewing the bank records, finding casino withdrawals and unexplained transfers, and obtaining Utley's alleged admission, all before the April 3 settlement.

**D. The release defeats the asset freeze even if some claims survive.**

Defendants do not contend that the release reaches conduct after April 3, 2026. The only claims that survive are those based on post-April 3 conduct, principally the Employment Agreement claim, and those claims do not support freezing accounts to recover the pre-April 3 transfers on which the Motion is built.

**E. X Strategies' own conduct shows it did not believe Utley stole the money, and it has waived and is estopped from claiming otherwise.** Independent of the release, X Strategies cannot recover the approximately $3.75 million its owners agreed to treat as distributions. David Lisko's March 31, 2026 summary of the owners' agreed terms provided that "[t]he Bruz Corporation will forgive approximately $3,750,000 in distributions that Stark Defense Industries Inc. received from X Strategies that The Bruz Corporation did not receive." Bruesewitz responded the same afternoon: "Looks good to me. I will agree to all terms and conditions once transfer of ownership is completed." The executed Settlement Agreement likewise describes the disputed sum as "funds in excess of 50% of distributions made from the Company to Stark and Bruz," and the parties adopted that recital "as their own." Then, as a condition of the same transaction, Bruesewitz signed an Employment Agreement on X Strategies' behalf making Utley its Chairman Emeritus and Executive

Advisor to the CEO, at $180,000 per year plus commissions, with responsibility for soliciting and managing company clients.

That sequence is irreconcilable with the theory of this lawsuit. A company does not forgive a thief, let him keep nearly $4M, add him to payroll, and entrust him with its most important client relationships. X Strategies' contemporaneous conduct undercuts any claimed likelihood of success and any claimed urgency.

The same conduct establishes waiver. Florida defines waiver as "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). Its elements are a waivable right, actual or constructive knowledge of that right, and intent to relinquish it. *See Air Prods. & Chems., Inc. v. La. Land & Expl. Co.*, 867 F.2d 1376, 1379 (11th Cir. 1989). Each is present. The Amended Complaint alleges that, before April 3, its President Michael Seifert audited the accounts, "determined that Utley's numerous payments to himself, and Stark Industries, were not distributions," obtained Utley's alleged admission, and presented those findings to Bruesewitz. (Am. Compl. ¶¶ 59–66.) With that knowledge, the owners agreed in writing to treat the funds as forgiven distributions. That is an express relinquishment, not mere delay. X Strategies is bound: in a member-managed LLC, "each member is an agent of the limited liability company," and here every member agreed. Fla. Stat. § 605.04074(1)(a).

X Strategies is also estopped. Equitable estoppel requires "(1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel." *State v. Harris*, 881 So. 2d 1079, 1084 (Fla. 2004). The owners represented that the funds were forgiven

distributions and the attorney memorialized it in writing. In reliance, Stark Industries surrendered its entire 50% interest and Utley gave up all management authority and signing power within 24 hours. And a party who "accepts the benefits of a settlement agreement . . . and knows . . . of the facts concerning that settlement . . . is thereafter estopped to attack the settlement." *Kisz v. Massry*, 426 So. 2d 1009, 1011 (Fla. 2d DCA 1983); *see also Sea-Land Serv., Inc. v. Sellan*, 64 F. Supp. 2d 1255, 1262 (S.D. Fla. 1999) (party "cannot keep the money and at the same time reject the settlement agreement"); *DeShong v. Seaboard Coast Line R.R. Co.*, 737 F.2d 1520, 1522 (11th Cir. 1984) (party who accepts benefits of a transaction "with full knowledge of the facts" may not "take an inconsistent position to avoid the corresponding obligations or effects"). X Strategies and its sole owner kept 100% of the company, full control of its accounts, and the Employment Agreement whose non-solicitation covenant X Strategies now seeks to enforce, while repudiating the distribution treatment that induced the transaction.

**II. The Requested Asset Freeze Exceeds the Court's Equitable Authority.**

**A. A federal court may not freeze assets to secure a money judgment.** A district court "ha[s] no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages," where no lien or equitable interest was claimed. *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 310 (1999). The Eleventh Circuit applies the same rule: "preliminary injunctive relief freezing a defendant's assets in order to establish a fund with which to satisfy a potential judgment for money damages is simply not an appropriate exercise of a federal district court's authority." *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1530

(11th Cir. 1994); *Noble Prestige Ltd. v. Galle*, 83 F.4th 1366, 1382–1383 (11th Cir. 2023) (same).

When a request to freeze assets is, in substance, a request for security, it is governed by Rule 64 and Florida's attachment statute, not by Rule 65. *See Rosen*, 21 F.3d at 1530–1531. X Strategies has not invoked or satisfied Florida's burdensome prejudgment writ of attachment law. Florida permits prejudgment attachment only on enumerated grounds, such as that the debtor "[w]ill fraudulently part with the property before judgment can be obtained" or "[i]s secreting the property." Fla. Stat. § 76.04. Those grounds must "clearly appear from specific facts shown by a verified complaint or a separate affidavit." Fla. Stat. § 76.08. "No attachment shall issue" until the plaintiff posts a bond "in at least double the debt demanded," Fla. Stat. § 76.12, which here would exceed $10 million. And the writ must be dissolved unless the plaintiff proves the grounds and "a reasonable probability that the final judgment in the underlying action will be rendered in the plaintiff's favor." Fla. Stat. § 76.24(1). The Eleventh Circuit has held that this statute is an "adequate, exclusive prejudgment remedy," so "the use of injunctive relief as a substitute for the remedy of prejudgment attachment, with its attendant safeguards, is improper." *Rosen*, 21 F.3d at 1530–1531. Its fear that a future judgment may be difficult to collect does not make its legal remedy inadequate. "The test of the inadequacy of a remedy at law is whether a judgment could be obtained, not whether, once obtained it will be collectible." *Rosen*, 21 F.3d at 1531.

**B. X Strategies' equitable labels do not change the analysis.** X Strategies relies on the rule that a claim for equitable relief may support a freeze "to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987–988 (11th Cir. 1995) (preserving documents and contraband). The rule does not fit this case. X

Strategies seeks only money. The Eleventh Circuit refused to freeze assets where, "[w]hen stripped of the rhetoric of misappropriated assets and constructive trusts," the complaint "essentially s[ought] the payment of a debt and damages for fraud," and the plaintiff "possesse[d] an adequate remedy at law." *Mitsubishi Int'l v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1519–1522 (11th Cir. 1994). Applying *Mitsubishi*, the Middle District recently denied a constructive-trust freeze where the plaintiff sought money damages. *See Asymmetric Operations Grp. v. Black Creek Precision, LLC,* 2026 WL 2572177 (M.D. Fla. July 9, 2026).

**C. Any freeze must be limited to specific, traced property, and the proposed order is not.** Even where an equitable claim is properly pleaded, "[a] constructive trust cannot be imposed on general assets." The property must be "specific, identifiable property" or "clearly traced in assets of the defendant." *Bender v. CenTrust Mortg. Corp.*, 51 F.3d 1027, 1029–1030 (11th Cir. 1995). A freeze "may not preserve any amount of assets in excess of the equitable relief sought." *Absolute Activist Value Master Fund Ltd. v. Devine, 2*016 WL 1572388, *5 (M.D. Fla. Apr. 19, 2016), The movant must also make "a preliminary showing that each asset they desire to remain frozen contains, or was purchased with," the alleged proceeds. *Id.* at *10. In *SEC v. ETS Payphones*, which X Strategies' authorities follow, a freeze was justified only up to "a reasonable approximation of a defendant's ill-gotten gains." 408 F.3d 727, 735 (11th Cir. 2005). That ceiling is firm: the power to order disgorgement (which is an SEC unique remedy not available here) "extends only to the amount with interest by which the defendant profited from his wrongdoing. Any further sum would constitute a penalty assessment." *Id.* at 735. The Eleventh Circuit vacated a freeze of all of a defendant's assets where the court made no "reasonable approximation" of ill-gotten gains. *FTC v. Bishop*, 425 F. App'x 796, 798 (11th Cir. 2011). X Strategies' claims

for treble damages under the civil theft and RICO statutes are legal, not equitable, and cannot enlarge any freeze. *See In re Fredeman Litig.*, 843 F.2d 821, 828 (5th Cir. 1988) (vacating freeze where "plaintiffs seek only treble damages").

The proposed order disregards each of these limits. It freezes "any funds located in" seven accounts without regard to the source, amount, or timing of any deposit. The Motion does not trace a dollar figure to any account, and X Strategies' own expert report shows why the omission matters. For example, it shows that Weisheimer's account held $146,260.91 before a gift from Utley and received credits "from other sources." A change in a person's bank account is interesting but irrelevant.

Courts reject freezes of an entire account where the record does not show "what percentage of funds" derived from the challenged conduct. *L-Acoustics v. Se7ven Sounds Music, Inc.*, 2023 WL 2931756, *3 (M.D. Fla. Mar. 28, 2023). A request to freeze every account fails where the movant does not explain "why preliminary relief of this scope . . . is necessary to secure a later equitable remedy from any particular defendant." *Price v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule A.,* 821 F. Supp. 3d 1315, 1333 (M.D. Fla. 2026). Paragraph 3 of the proposed order, which reaches unidentified "items purchased with funds traceable to X Strategies," is too indefinite.

**D. Defendants request exclusion of each account.** Any asset not specifically traceable is exempt from any freeze order. The burden rests exclusively with X Strategies.

**III. X Strategies Has Not Shown Imminent Irreparable Harm.**

"An injury is 'irreparable' only if it cannot be undone through monetary remedies," and "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Ne. Fla. Chapter of*

*Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285–1286 (11th Cir. 1990). "An injury is irreparable only if it cannot be undone through monetary remedies." *Id.*

X Strategies seeks money, and its claimed harm is the risk of not collecting it. An inability to collect is irrelevant to the analysis. Its fear is premised upon social-media images of travel, dining, and cars. It also relies on Seifert's statement that he is "not aware of any legitimate source of income or wealth" for Defendants' spending. X Strategies filed a lawsuit after settling its claims on April 3 on the apparent belief that it does not understand how Derek Utley is so successful. Viewing an Instagram page does not satisfy Rule 11.

Michael Seifert's apparent envy of Utley's success and lifestyle is unbecoming and not a basis for a lawsuit or an injunction. Although the Court may consider affidavits at this stage, "vague or conclusory affidavits are insufficient to satisfy the plaintiff's burden," and "affidavits based on personal knowledge are accorded more weight than affidavits based upon mere belief or hearsay." *Palmer v. Braun*, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001), aff'd, 287 F.3d 1325 (11th Cir. 2002); *Rodriguez v. Valdes*, 2026 WL 2596418, *8 (S.D. Fla. June 3, 2026) ("self-serving affidavits filled with conclusory statements, without more, are insufficient to support injunctive relief.").

X Strategies' delay confirms the absence of urgency. "A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). In *Wreal*, an unexplained five-month delay defeated relief where the motion relied on evidence available when the complaint was filed. X Strategies knew of the alleged misappropriation well before the April 3 settlement, yet it sought emergency relief only in November 2026, after filing this action.

**IV. The Non-Solicitation Injunction Should Be Denied or Strictly Limited.**

**A. X Strategies has not proven a breach.** The party enforcing a restrictive covenant must "plead and prove" a legitimate business interest and that the restraint is reasonably necessary to protect it. Fla. Stat. Ann. § 542.335. X Strategies' evidence of current solicitation is a single paragraph in Seifert's declaration. That paragraph reports what unnamed "individuals" told X Strategies, without identifying a client, a date, or a communication. This is called hearsay and it is inadmissible. "[A] party seeking enforcement of a restrictive covenant cannot rely on customer relationships as a legitimate interest unless the party pleads and proves the identity of *specific* customers and the substantiality of the relationship with those customers." *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1291 (11th Cir. 2022) (emphasis in original; vacating preliminary injunction in non-solicitation case).

Florida also construes "solicit" narrowly. A non-solicitation covenant forbids "proactive steps to obtain" clients, but does "not disallow [a former employee] from accepting former clients who actively seek [his] assistance." *J.K.R., Inc. v. Triple Check Tax Serv., Inc.*, 736 So. 2d 43, 44 (Fla. 1st DCA 1999). Evidence that is merely "consistent with solicitation . . . falls short of establishing it," particularly where the movant could have, but did not, obtain testimony from the client itself. *Strategic Staffing Sols., Inc. v. O'Donohue*, 2006 WL 8433056, at *7 (M.D. Fla. Jan. 6, 2006) (denying injunction). A movant who shows only the "possibility" of a breach, through hearsay and speculation, is not entitled to relief. *See Pro Servs., Inc. v. BHS Corrugated – N. Am., Inc.,* 2024 WL 4290765, at *4–5 (S.D. Fla. July 5, 2024) (denying injunction). X Strategies offers no client declaration, no communication from Utley, and no specific client who was proactively solicited. Utley is not prohibited

from servicing or communicating with clients of X Strategies. He simply cannot encourage them to leave X Strategies – and there is zero evidence of this.

The only client the Motion names is Tower Strategy, LLC, which Plaintiff claims is Utley's employer. The covenant's non-competition clause, however, applies only "during Employee's employment." Generic assertions about customer lists and pricing do not establish a protectable interest. A movant must "articulate exactly how the information is unique or proprietary" and how it could be unfairly used. *Lucky Cousins Trucking, Inc. v. QC Energy Res. Texas, LLC,* 223 F. Supp. 3d 1221, 1225–1226 (M.D. Fla. 2016) (denying injunction); *Semper Foods, LLC v. Ouellette,* 2024 WL 3104066 (S.D. Fla. May 6, 2024) (denying injunction). In sum, X Strategies has zero evidence Utley is doing anything prohibited by the Employment Agreement.

**B. The statutory presumption does not relieve X Strategies of its burden.** Florida's presumption of irreparable injury applies only to the "violation of an enforceable restrictive covenant." Fla. Stat. Ann. § 542.335. The presumption does not extend to a covenant whose breach was not pleaded and found, and that without it "remote [and] speculative" harm does not suffice. *Vital Pharms.*, 23 F.4th at 1293. Florida's statutory presumption "does not apply in preliminary injunction proceedings under diversity jurisdiction." *Pliteq, Inc. v. Mostafa,* 775 F. Supp. 3d 1231, 1257 (S.D. Fla. 2025). The Employment Agreement's irreparable-harm clause is "not dispositive" and does not bind the Court. *Id.* at 1260-1261. First and foremost, X Strategies must prove that Derek Utley has violated his employment agreement. It has presented zero evidence of this.

**C. Utley's hardship must be weighed.** Section 542.335(1)(g)(1) governs whether a covenant is enforceable, not the remedy. In federal court, the Court must balance harms

under Rule 65 and give "full consideration to the hardship" the enjoined party would suffer. *TransUnion Risk & Alternative Data Sols., Inc. v. MacLachlan,* 625 F. App'x 403, 407 (11th Cir. 2015). The proposed order's paragraph 4 would bar Utley from communicating with "any persons or other business-related entities" in order to encourage business away from X Strategies. That language reaches far beyond identified clients and would impair Utley's ability to earn a living in his field. If the Court enters any covenant relief, it should be limited to soliciting identified clients of X Strategies in existence on Utley's last day of employment, consistent with the covenant's text, and should expire with the covenant's one-year term.[4]

**V. No Injunction May Issue Without a Substantial Bond.**

Rule 65(c) permits a preliminary injunction or temporary restraining order "only if the movant gives security in an amount that the court considers proper." For the covenant, Florida law is categorical: "No temporary injunction shall be entered unless the person seeking enforcement of a restrictive covenant gives a proper bond, and the court shall not enforce any contractual provision waiving the requirement of an injunction bond or limiting the amount of such bond." Fla. Stat. Ann. § 542.335(1)(j). The Employment Agreement's purported waiver of a bond is therefore unenforceable. A freeze of every operating and personal account would prevent Defendants from paying ordinary living and business expenses and the costs of this defense, so any security must be commensurate. The bond must be sized to "the costs and damages sustained by any party found to have been

[4] This is particularly relevant. X Strategies has not identified a single client solicited by Utley. It is X Strategies burden to prove a breach; not Utley's burden to prove compliance. Defendants object to Plaintiff's apparent attempt to use this proceeding as a means of forcing Utley to disclose his clients. In other words, X Strategies should be prohibited from asking Utley to identify any of his clients, without it first making a prima facia showing of one or more specific X Strategies' clients who were solicited. Defendants doubt, highly, that X Strategies will provide supporting evidence at the November 24 hearing.

wrongfully enjoined or restrained," Fed. R. Civ. P. 65(c). Florida's own requirement that a plaintiff seeking prejudgment attachment post a bond of "at least double the debt demanded," Fla. Stat. § 76.12, is an appropriate benchmark for a freeze that functions as an attachment. No injunction should take effect prior to the posting of the bond.

***X Strategies and Holland & Knight Engaged in Sanctionable Fraud***

X Strategies sought this relief *ex parte*, certifying that it "has not made efforts to give notice to Defendants." Yet its Motion, Complaint, Amended Complaint, or Amended Motion never disclosed the April 3, 2026 Confidential Settlement Agreement, which its own counsel drafted and in which its sole owner released these very accusations. Nor does it mention the email between and among Bruesewitz, Utley and Attorney David Lisko in which the parties confirm that the approximately $3.75M would be treated as a distribution that Utley could keep. Plaintiff's Motion's **entire** description of the events of April 3 is a single line: "On April 3, 2026, Stark Industries relinquished its ownership interest and Utley resigned as Chairman and CFO." *See* Mot. P. 6. Holland & Knight's explanation of events it was an *active* participant in is false, misleading and deceitful.

In an *ex parte* proceeding, "a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." R. Regulating Fla. Bar 4-3.3(c); S.D. Fla. L.R. 11.1(c) (adopting the Rules Regulating The Florida Bar). Courts in this Circuit have vacated *ex parte* relief and imposed sanctions for exactly this kind of omission. *See Green Dev. Corp. S.A. de C.V. v. Zamora*, 2016 WL 2745844, at *4 (S.D. Fla. May 10, 2016) ("The duty of candor is particularly heightened where, as here, ex parte proceedings are launched without the opposing party's knowledge or participation."); *Int'l Beauty Exch., Inc. v. Toney Dollar*

*Kingdom, Inc.*, 199 F.R.D. 700, 701 n.6, (S.D. Fla. 2001) (vacating *ex parte* order where counsel's failure to disclose related litigation was a "prima facie violation of his duty of candor to the tribunal"); *Devereaux v. Colvin*, 844 F. Supp. 1508 (M.D. Fla. 1994) (imposing Rule 11 sanctions where movant obtained *ex parte* TRO without apprising the court of a material fact). The fact that the parties settled this dispute on April 3, 2026 and the fact that Utley was permitted to keep the very funds this lawsuit erroneously claims was stolen is the definition of a material fact that Holland & Knight knew about and should have disclosed.

***Conclusion***

X Strategies has identified millions of dollars Utley took as *distributions* when he owned 50% of the company. It made this "discovery" prior to the April 3 settlement. During the process of Utley being extricated from X Strategies, the parties agreed that the distributions that are the subject of this meritless lawsuit were in fact distributions, that Utley could keep the distributions, and any claim of wrongdoing – which the Defendants categorically deny – was released effective April 3, 2026. As part of that settlement, X Strategies hired Utley as its Chairman Emeritus. Having forgiven the money and entrusted Utley with its clients, X Strategies has waived, and is estopped from asserting, the theft it now alleges.[5]

Defendants Derek Utley and Stark Defense Industries, Inc. respectfully request that the Court deny the Motion. In the alternative, Defendants request that the Court (i) deny any asset freeze based on conduct before April 3, 2026; (ii) exclude from any freeze each account, or portion of an account, not shown to contain identified proceeds of unreleased conduct, and cap any freeze at the amount traced; (iii) limit any non-solicitation relief to

[5] Utley was wrongfully terminated on June 3, 2026, yet X Strategies paid him $32,000 on July 1.

identified clients in existence on Utley's last day of employment, for the remainder of the covenant's one-year term; (iv) require X Strategies to post a substantial bond before any relief takes effect; and (v) receive live testimony at the November 24, 2026 hearing.

Defendants further request that X Strategies and their counsel Holland & Knight be sanctioned for violating the duty of candor and Rule 11, and additionally, be ordered to pay the Defendants' attorney fees and costs.

Respectfully submitted,

Matthew Sarelson, Esq.
Florida Bar No. 888281
**SARELSON & SAJDERA, PLLC**
Attorneys for Derek Utley &
Stark Defense Industries, Inc.
1601 Forum Place, Suite 202
West Palm Beach, Florida 33401
Telephone: (305) 773-1952
matt.sarelson@ssxlaw.com